UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 4:24-cv-00774 |
| HOUSING AUTHORITY OF THE CITY OF GRAPEVINE, TEXAS, | ) **COMPLAINT AND** |
| | ) **DEMAND FOR JURY TRIAL** |
| Defendant. | ) |

## COMPLAINT

Plaintiff, the United States of America (the "United States"), alleges as follows:

### I.  INTRODUCTION

1. The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (the "Fair Housing Act" or "Act"). This action is brought under 42 U.S.C. § 3612(o) on behalf of Michael Ivey ("Complainant"), against the Housing Authority of the City of Grapevine for discriminating against Complainant because of his disability.

### II.  JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o)(1).

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred in this judicial district, and because Defendant and the subject property are located in this judicial district.

### III. THE PARTIES AND THE SUBJECT PROPERTY

4. Plaintiff is the United States of America.

5. Defendant Grapevine Housing Authority ("GHA") is a public housing authority located in Grapevine, Texas.

6. Defendant GHA receives federal funding from the Department of Housing and Urban Development ("HUD").

7. Defendant GHA owns and operates 98 units located on five streets in Grapevine, Texas.

8. At all times relevant to this Complaint, Complainant was a tenant living at 320 W. Texas Street, Grapevine, Texas, 76051 ("Subject Property").

9. At all times relevant to this Complaint, Defendant GHA owned and operated the Subject Property.

10. The Subject Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

11. At all times relevant to this action, Jane Everett has been the Executive Director of GHA.

12. At all times relevant to this action, Everett has been responsible for the day-to-day management of GHA, including making or approving decisions regarding the termination of a tenant's lease, and the application and enforcement of GHA's leases and other rules governing tenants, including considering requests for reasonable exceptions, adjustments, or other accommodations to those rules.

13. At all times relevant to this action, Bonnie McHugh has been the Vice Chair and Finance Officer for the Grapevine Housing Authority Board of Commissioners.

14. At all times relevant to this action, McHugh's duties have included, among other things, conducting hearings for tenants appealing determinations regarding alleged lease violations when the Chair is not available.

15. Complainant is a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).

16. Since at least 2013, Complainant has had one or more physical or mental impairments, including diabetes, hypertension, and cardiovascular impairments. These impairments — which have caused Complainant to have one or more heart attacks or other cardiac events, and to be hospitalized and to seek emergency medical care — have substantially limited one or more of Complainant's major life activities, including cardiovascular function, circulatory function, caring for one's self, speaking, and working.

17. Complainant has a record of having one or more of the substantially limiting impairments identified above.

18. Alternatively, GHA has regarded Complainant as having one or more of the substantially limiting impairments identified above.

19. At all times relevant to this action, GHA restricted occupancy of the Subject Property to individuals with a disability and individuals who were 62 years old or older.

20. Complainant resided at the Subject Property from approximately 2013 to approximately December, 2021.

21. During the time that he resided at the Subject Property, Complainant was under the age of 62 and was eligible to reside in the Subject Property because Defendant GHA identified him as a person with a disability.

22. Complainant's form 50058, a form required by HUD and used by Defendant GHA for individuals utilizing public housing, identifies Complainant as a person with a disability.

23. At all times relevant to the allegations in this action, Defendant GHA was aware that Complainant took numerous medications, that he had heart problems, and that his speech was sometimes impaired, including that he sometimes slurred his words when talking. In 2019, as part of his annual certification, Complainant gave Defendant GHA a list of prescribed medications he was taking. Prior to 2020, Complainant had discussed his heart problems with Everett. And prior to the incident in 2020 discussed below in paragraphs 25-31, Everett had observed Complainant speaking "like he [had] cotton in his mouth", with "slurred" speech.

24. Complainant is an aggrieved person under 42 U.S.C. § 3602(i)(1).

## IV.  ALLEGATIONS RELATING TO DEFENDANT'S DISCRIMINATORY HOUSING PRACTICES

25. On September 11, 2020, Complainant experienced a medical crisis that left him disoriented and confused as a result of symptoms caused by his disabilities as described above in paragraph 16.

26. At approximately 3:00 am on September 11, 2020, after the onset of the medical crisis described above, Complainant attempted to walk to his mother's residence,

4

which was located in another GHA property less than a mile away from Complainant's residence.

27. As a result of being disoriented, Complainant was not able to find his way to his mother's residence and he began knocking on neighbors' doors to ask for help. One of Complainant's neighbors called the police.

28. Two Grapevine Police Department officers responded to the call.

29. The officers questioned Complainant about his actions. Complainant explained that he was trying to find his mother's unit.

30. One officer asked Complainant if he was intoxicated, and Complainant responded that he was not. Neither officer administered a field sobriety test.

31. The officers escorted Complainant back to his home. The officers did not arrest, cite, or ticket Complainant.

32. One of the officers later stated to HUD that he did not recall smelling alcohol on Complainant's breath.

33. The next day, on September 12, 2020, Complainant went to a hospital emergency room where he was diagnosed with hypertension and ketonuria, a condition that exists when a person has high levels of ketones in their urine. His blood pressure was recorded as 208/120 at the end of his visit. He was treated with sodium chloride and instructed to follow up with his primary care physician.

34. Ketonuria is common in patients with diabetes, and the symptoms of ketonuria include heavy breathing, tiredness, and confusion.

35. On or about September 14, 2020, Complainant attempted to contact Everett, but she was out of the office. He spoke with another GHA employee who sent an email to Everett relaying the conversation with Complainant.

36. In the email, the GHA employee told Everett that: "[Complainant] then proceeded to tell me he 'had a bad episode the other night.' He didn't know whose door he was knocking on and he ended up at the ER with his diabetes out of whack and his blood pressure at 'stroke level'. He was trying to find his mother, and he was disoriented and felt like he was in a dream."

37. During the afternoon of September 14, 2020, Everett received and reviewed the Grapevine Police Department reports from September 11.

38. After reviewing the reports, Everett instructed another employee to prepare a lease termination letter. Everett told the employee that Complainant's "story of diabetes could result from excessive alcohol couldn't it??[sic]".

39. On September 15, 2020, Defendant GHA issued Complainant a lease termination letter signed by Everett. The letter stated that Complainant's lease was being terminated because of his conduct on September 11, which the letter described as threatening the safety of other residents and violating provisions of Complainant's lease.

40. The letter further stated that Complainant's lease would end in three days, on September 18, 2020, and that GHA would begin eviction proceedings on September 21, 2020, if Complainant had not moved out by that time.

41. The letter claimed that Complainant violated the "Tenant Obligations" lease provision requiring that tenants "refrain from any drug-related or violent criminal activity or

6

other activity that threatens others" including activity that "threatens [others'] health, safety, or right to peaceful enjoyment of PHA's premises" and notes that "a criminal conviction is not needed to demonstrate serious violations of the Lease." The letter further claimed that Complainant violated the "Tenant Obligations" lease provision requiring that tenants act in a manner "conducive to maintaining the development in a decent, safe and sanitary condition, including refraining from behavior caused by drug or alcohol abuse that interferes with [other tenants'] health, safety or right to peaceful enjoyment of the premises…" The letter also points to the lease provision specifying that failure to "comply with these Tenant Obligations is grounds for termination of [the] Lease" and informs Complainant of his right to request a formal hearing with a hearing officer. GHA did not identify any other alleged lease violations as the basis for terminating Complainant's lease and requiring that he move out in six days.

42. The letter further informed Complainant that if he wished to challenge the determination, he needed to request a hearing by noon on September 18, 2020, and that the hearing would take place no later than 3:00 p.m. that day.

43. On or about September 15, 2020, Complainant provided GHA with a copy of the first page of his After Visit Summary from his visit to the emergency room on September 12. The After Visit Summary reflects that Complainant was diagnosed with ketonuria and hypertension and treated with sodium chloride.

44. Complainant requested a hearing, which GHA held on September 18, 2020. Bonnie McHugh presided over the hearing.

45. At the hearing, McHugh questioned Complainant about why he was "banging" on neighbor's doors, whether he was drinking alcohol on September 11, and whether he was over-medicated.

46. Complainant explained that he was knocking on doors to ask for help and trying to find his mother's unit. He repeatedly mentioned his health problems, noting that he had suffered two heart attacks, was diabetic, and had visited the hospital the day after the incident. Complainant stated that he had not been drinking and does not overmedicate. He also apologized and said that he did not mean to hurt anyone.

47. McHugh upheld GHA's decision to terminate the lease, concluding that Complainant's behavior violated the lease and an individual with a medical condition is still required to adhere to the lease.

48. Complainant responded that he wanted to stay in his unit and asked what his options were. McHugh informed Complainant that if he did not return his keys within three days, GHA would file for an eviction.

49. McHugh issued a letter the same day memorializing the lease termination decision and stating that Complainant was not allowed on property and "may not visit [his] mother who lives on GHA property."

50. Four days after the hearing, on September 22, 2020, GHA initiated an "Eviction Case" with the Tarrant County Justice of the Peace, Precinct 3, alleging that Complainant engaged in "behavior that threatens the safety of tenants."

51. During the eviction proceedings, on or about October 6, 2020, Complainant submitted a letter from his primary care physician, Dr. Elizabeth Bah, dated October 5, 2020

(the "Oct. 5 Bah Letter"). In the letter, Dr. Bah stated she had been caring for Complainant since October 2013 and had been treating his hypertension and diabetes.

52. The Oct. 5 Bah Letter also stated that Complainant "was seen in the emergency department at Baylor Grapevine on 9/12/20. He was having chest pain the day prior and was confused later in the night . . . . His blood sugar that morning was 102, I have suspicion though it must have been lower previously in the night as he was complaining of hypoglycemic symptoms while in the emergency department."

53. Dr. Bah went on to explain that she had changed Complainant's blood pressure medication dosages, and his blood pressure was now "better controlled." She also noted that Complainant had purchased a medical alert bracelet in case there was a future medical event. Finally, she observed that Complainant was able to perform independently his activities of daily living and manages well his medications.

54. After receiving Dr. Bah's letter through the Tarrant County eviction proceedings, Defendant GHA continued to pursue the eviction of Complainant.

55. The Tarrant County Justice of the Peace court held a trial on October 15, 2020.

56. The court awarded GHA a Judgment of Possession over Complainant's unit. Complainant appealed the decision to the Tarrant County Civil Court.

57. GHA continued to litigate the eviction case in Tarrant County Civil Court. On March 5, 2021, while the eviction case was still proceeding in that court, Complainant emailed Everett, attaching a letter in which he stated he was "making an immediate request to the Grapevine Housing Authority for [Complainant] to be allowed to stay in [his] apartment as a Reasonable Accommodation for [his] medical condition." The

letter also stated he was "[p]romising to not engage in such behavior again" and offered to enter into a behavior plan.

58. Everett replied to this email the same day, acknowledging receipt of the email and agreeing to review it.

59. The same day, Complainant's counsel in the eviction proceeding sent a letter via email to Defendant GHA's counsel requesting a reasonable accommodation of Complainant's disability with respect to the lease provisions cited in GHA's lease termination letter. The letter stated the request was made pursuant to the lease agreement, Fair Housing Act, and Section 504 of the Rehabilitation Act of 1973.

60. Two weeks later, on March 16, 2021, Complainant's eviction counsel sent GHA another letter supplementing the previous request for a reasonable accommodation. This letter referenced the Oct. 5 Bah Letter wherein Dr. Bah discussed Complainant's medical conditions, her medical opinion regarding the impact of his blood sugar on his actions on September 11, and the medical steps that she and Complainant had taken to better control his medical conditions, including adjusting his medication and Complainant wearing a medical alert bracelet. Complainant's attorney stated that these actions should demonstrate Complainant was no longer an immediate threat to GHA residents, and noted that an incident like September 11, 2020, had not occurred before or since.

61. Defendant did not provide a substantive response to these requests for a reasonable accommodation.

62. On March 25, 2021, the GHA Board of Commissioners met and entered an executive session to receive advice from the city attorney regarding the pending eviction case

with Complainant. They then reconvened in the regular meeting and voted for the Executive Director to "address the [Complainant] matters consistent with the Board's discussion in Executive Session and to take all other necessary action."

63. Between March 2021 and May 2021, Complainant suffered heart-related medical emergencies, including multiple heart attacks.

64. On August 10, 2021, Defendant GHA's counsel notified HUD that it would dismiss the eviction, acknowledging the length of time that had passed since the incident that prompted the eviction.

65. The next day, Defendant GHA filed a Notice of Nonsuit, taking a nonsuit of all claims against Complainant without prejudice to refiling.

66. As a result of Defendant's conduct, Complainant suffered harm, including, but not limited to, physical and emotional distress.

## V.   HUD COMPLAINT AND CHARGE OF DISCRIMINATION

67. On or about February 23, 2021, Complainant filed a timely complaint with HUD alleging that Defendant had engaged in one or more discriminatory housing practices. The complaint was amended on March 9, 2021, and August 28, 2023.

68. Pursuant to 42 U.S.C. § 3610, the Secretary of HUD completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.

69. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendant engaged in one or more discriminatory housing practices, in violation of the Fair Housing Act.

70. On February 6, 2024, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Defendant with engaging in discriminatory housing practices.

71. On February 13, 2024, Complainant timely elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

72. On February 15, 2024, the Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceedings.

73. Following this Notice of Election, the Secretary authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

74. The United States and Defendant entered into agreements tolling the expiration of the statute of limitations under 42 U.S.C. § 3612(o) through August 14, 2024.

## VI. DEFENDANT'S FAIR HOUSING ACT VIOLATIONS

75. The United States incorporates the allegations as set forth above.

76. Through the conduct described above, Defendant has:

   a. Discriminated in the rental, or otherwise made unavailable or denied, a dwelling to a renter based on the disability of that renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

   b. Discriminated against a person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of that person, in violation of 42 U.S.C. § 3604(f)(2)(A); and

    c. Refused to make a reasonable accommodation in rules, policies, practices, or services, when such accommodation was necessary to afford Complainant an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

77. Defendant's conduct, as described above, constitutes one or more "discriminatory housing practice[s]" within the meaning of 42 U.S.C. § 3602(f).

78. Complainant is an "[a]ggrieved person" as defined by 42 U.S.C. § 3602(i) and has been injured by Defendant's conduct.

79. Defendant's discriminatory conduct was intentional, willful, and/or taken in disregard of the rights of others.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court enter an order that:

1. Declares Defendant's conduct, as alleged in this complaint, violates the Fair Housing Act;

2. Enjoins Defendant, its agents, employees, successors, and all other persons in active concert or participation with any of them from:

    a. Discriminating based on disability, in violation of the Fair Housing Act;

    b. Discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, based on disability;

    c. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant to the position he would have been in but for the discriminatory conduct; and

    d. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

3. Awards monetary damages to Complainant pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

4. Awards such additional relief as the interests of justice may require.

Dated: August 14, 2024

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

LEIGHA SIMONTON
United States Attorney
Northern District of Texas

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

*/s/ Lisa R. Hasday*
LISA R. HASDAY (TX Bar No. 24075989)
Assistant United States Attorney
United States Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, TX 75242
Phone: (214) 659-8737
Fax: (214) 659-8807
Email: lisa.hasday@usdoj.gov

*/s/ Jasmin Lott*
TIMOTHY J. MORAN
Deputy Chief
JASMIN LOTT (TX Bar No. 24129013)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
150 M Street NE
Washington, DC 20002
Phone: (202) 598-0000
Fax: (202) 514-1116
Email: jasmin.lott@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*