UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

  Plaintiff,

v.   No. 4:24-cv-0774-P

**HOUSING AUTHORITY OF THE CITY OF GRAPEVINE, TEXAS,**

  Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss. ECF No. 7. After considering the Motion, the briefs, and the applicable law, the Court will grant the Motion and dismiss the Government's claims.

## BACKGROUND[1]

Defendant Housing Authority of the City of Grapevine, Texas (the "Housing Authority") operates 98 apartment units. Michael Ivey rented one of those units from 2013 to 2021. Ivey has diabetes, hypertension, and "cardiovascular impairments."

Around three o'clock in the morning in September 2020, Grapevine Police Department officers responded to a call from another Housing Authority resident, who reported that someone was banging on her door. Officer Hensley arrived and found Ivey stumbling on a porch and speaking in a slurred voice. Ivey stated that he was trying to contact his mother, who lived nearby.

---

[1] The facts in this summary are taken from the Government's Complaint and from the police body camera footage submitted in this case. The facts drawn from the footage are included for context only; none of the facts drawn solely from the footage were dispositive in today's decision.

Officer Hensley noticed a bloody cut on Ivey's head. Ivey told the officer that he sustained the injury when a "piece of metal" fell and hit his head while he was rolling some "stuff" to a dumpster. (Throughout the interaction, Ivey's account of his head injury changed. At one point, he said someone had kicked him in the head at a bar.) When the officer asked Ivey if he had been drinking, Ivey said he had not. Ivey told the officer that his mother lived at unit 413, indicating the unit neighboring the one where the officer found him. But the officer told Ivey that he was pointing to unit 326, not 413.

Officer Hensley then advised Ivey to go back home. Ivey led the officer to unit 326—the unit Ivey had initially said was his mother's. Before Ivey attempted to enter the home, Officer Hensley asked if Ivey was "sure" that he lived there, and Ivey said he was. But when Officer Hensley told him he was on Worth Street, Ivey realized he was not at his own home and indicated that he was "confused."

With the help of Officer Hensley and another officer, Velez, Ivey eventually arrived home. Officer Velez asked Ivey, "Do you want medics to come check you?" Ivey answered that he was "fine." Ivey told conflicting stories (involving a varying number of brothers) about what had prompted him to start walking out to his mother's residence. The officers instructed him to stay home the rest of the night. A day and a half later, Ivey went to a hospital, where caregivers diagnosed him with hypertension and ketonuria.

After reviewing information from the police, the Housing Authority sent Ivey a lease termination letter, telling him his lease would end in three days. The letter warned Ivey that if he did not move out by then, the Housing Authority would begin eviction proceedings. The letter contended that Ivey had violated the "Tenant Obligations" section of his lease, which prohibits "any drug-related or violent criminal activity or other activity that threatens others" or their "right to peaceful enjoyment of [the] premises." The letter informed Ivey of his right to request a formal hearing with a hearing officer.

Ivey asked for a hearing. The Housing Authority held his hearing before Ivey's assigned move-out date. At the hearing, Housing Authority

2

representatives asked Ivey to explain his behavior. In response, Ivey said he was knocking on doors asking people to help him find his mother's unit. He emphasized his health problems, mentioning that he suffered from diabetes, had endured two heart attacks, and was in the hospital the day after the incident.

The Housing Authority stood by its decision. It filed an eviction proceeding with the Tarrant County Justice of the Peace, alleging that Ivey's behavior threatened the safety of other tenants. A few weeks later, the Justice of the Peace held a trial and awarded the Housing Authority a judgment of possession over Ivey's unit. Ivey appealed. During the district-court litigation, Ivey sent multiple letters to the Housing Authority, asking that he be allowed to stay in his unit as a "reasonable accommodation" for his medical condition. The Housing Authority acknowledged receipt of the request but never made an official decision about it. Almost a full year later, the Housing Authority nonsuited its eviction action. Ivey remained in the apartment uninterrupted until he willingly moved to Wichita Falls after the eviction litigation ended.

Ivey filed a complaint with the Department of Housing and Urban Development of the United States ("HUD"). HUD investigated the matter and determined that reasonable cause existed to believe that the Housing Authority discriminated against Ivey in violation of the Fair Housing Act (the "FHA"). HUD charged the Housing Authority with housing discrimination, and the Housing Authority elected to have the claims resolved in a civil action under 42 U.S.C. § 3612(a). The Administrative Law Judge terminated the administrative proceedings, and the government filed this civil action.

The Housing Authority moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Housing Authority argues that the Government's allegations do not state a claim for a violation of the FHA. Specifically, the Housing Authority contends that the Government failed to allege (1) that the Housing Authority made Ivey's residence unavailable; (2) that Ivey has a "handicap" as the FHA defines it; and (3) that the adverse action was taken because of the handicap.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678.

## ANALYSIS

In 42 U.S.C. § 3604(f), Congress prohibited discrimination in renting against renters with handicaps. Section 3604 makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter," *Id.* § 3604(f)(1)(A), or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person," *Id.* § 3604(f)(2)(A). The FHA defines "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" *Id.* § 3604(f)(3)(B). The Government alleges that the Housing Authority violated those three provisions of the FHA. The Housing Authority argues that the Government failed to sufficiently plead (1) that Ivey's dwelling ever became "unavailable" within the meaning of section 3604; (2) that Ivey's conditions are a "handicap" as defined in section 3604; and (3) that the Housing Authority began the eviction process "because of" Ivey's alleged handicap.

### A. The Housing Authority never took an adverse action that made the apartment unavailable.

The Government alleges that the Housing Authority terminated Ivey's lease and ordered him to leave. The Housing Authority argues that the Government fails to state a claim because it does not allege that Ivey's apartment was made "unavailable." The Court agrees.

To survive a motion to dismiss on a claim under the FHA, a plaintiff must first allege that the defendant took an adverse action making the dwelling "unavailable." *See Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, 468 F. Supp. 3d 800, 809 (W.D. Tex. 2020); 42 U.S.C. § 3604(f). Neither party has provided the Court with binding authority defining "unavailable," nor has the Court found any. Under some non-binding precedent from other circuits, a plaintiff need not

necessarily show that the landlord successfully removed the tenant. For example, one district court found a violation of section 3604 when the defendant "*attempted* to make housing unavailable to [the] plaintiff" by "attempt[ing] to evict her, serv[ing] her with termination notices, and harass[ing] her[.]" *Carlson v. Sunshine Villas HOA, Inc.*, No. 2:18-CV-1-FTM-99MRM, 2018 WL 2317820 (M.D. Fla. May 22, 2018). But generally, the landlord must do more than merely begin eviction proceedings to run afoul of the law. In cases finding that a landlord made a dwelling unavailable, the attempt to evict the tenant is usually accompanied by other egregious conduct. For example, in *Carlson*, the landlord not only attempted to evict the plaintiff but also sent her "harassing" text messages. *Id.* at *1. And in *Martinez v. Optimus Props., LLC*, the court found a violation when the landlords subjected Spanish-speaking tenants to a campaign of abuse to coerce them to vacate the apartments and replace them with tenants of another race. Nos. 2:16-08598-SVW-MRW, 2017 WL 1040743 (C.D. Cal. Mar. 14, 2017).

In the absence of precedent from the United States Court of Appeals for the Fifth Circuit or guidance from our sister courts, this Court is left to its own best judgment. The Court need not decide what exact level of adverse action would cause the dwelling to become "unavailable"; the Court need only conclude that the Housing Authority's conduct here does not. To take an adverse action that makes a dwelling "unavailable," a defendant must do more than merely start the eviction process and order the tenant to vacate the dwelling. Indeed, according to the Government, Ivey continued residing in the apartment uninterrupted for nearly a year after the eviction action was filed. Thus, based on this Court's interpretation of section 3604, the Government failed to sufficiently allege that the Housing Authority took an adverse action making the dwelling "unavailable."

## B. The Government fails to state a claim for failure to accommodate.

Discrimination under section 3604 includes a refusal to make reasonable, necessary accommodations. *Id.* § 3604(f)(3)(B). The Housing Authority argues that the Government has not sufficiently alleged a failure to accommodate. The Court agrees.

The Court makes two assumptions for argument's sake. First, the Court assumes without deciding that Ivey's heart conditions qualify as a handicap within the meaning of the FHA. Second, the Court assumes that allowing Ivey to stay in his apartment during the eviction proceedings was a reasonable and necessary accommodation and that, as such, the Housing Authority was obligated to grant it.

But the Housing Authority *did* grant that accommodation, even according to the Government's version of events. The Government does not dispute that the Housing Authority allowed Ivey to remain in his apartment throughout the eviction litigation and even renewed his lease in September 2021. Nor does the Government dispute that Ivey only left the Housing Authority's apartments when he moved to Wichita Falls.

The Court recognizes that a delay in granting a reasonable accommodation request can be a constructive denial. *See Groome Res. Ltd. LLC v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000). The Government argues that happened here when the Housing Authority left Ivey's request unanswered for almost a year. But the whole time the request was pending, Ivey had exactly what he was requesting: possession of the apartment unit. By any measure, that is not what a denial—constructive or actual—looks like. The Government therefore failed to state a claim for failure to accommodate.

\* \* \*

To state a claim under subsections (f)(1) and (f)(2) of section 3604, the plaintiff must properly allege that the defendant discriminated against the renter "because of [the renter's] handicap." 42 U.S.C. § 3604(f). In response to the Housing Authority's argument that the Government failed to plead this causation element, the Government offers only its failure-to-accommodate allegations.[2] Because the Government fails to state a claim for failure to accommodate, its claims for relief under § 3604(f)(1) and (f)(2) therefore both necessarily fail.

---

[2]Although not explicit in the statute, the Court recognizes that facts supporting a failure to accommodate are relevant to the causation requirement—after all, it is a renter's handicap that would make an accommodation necessary to begin with.

7

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Housing Authority's Motion and **DISMISSES** all of the Government's claims **with prejudice**.

**SO ORDERED** on this **29th day of January 2025.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

8